**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC, | ) |
| Plaintiff, | ) Case No.: 2:22-cv-01942-GMN-MDC |
| vs. | ) |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*, | ) **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND EXPUNGING LIS PENDENS** |
| Defendants. | ) |

Pending before the Court are the Motions to Dismiss Amended Complaint and Expunge Lis Pendens, (ECF Nos. 24, 25), filed by Defendant Federal National Mortgage Association ("Fannie Mae"). Plaintiff SFR Investments Pool 1, LLC ("SFR") filed a Response, (ECF No. 30), to which Fannie Mae filed a Reply, (ECF Nos. 35, 36). Defendant NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint") filed Notices of Joinder, (ECF Nos. 26, 27, 37), to Fannie Mae's Motions and Reply.

For the reasons discussed below, the Court GRANTS in part and DENIES in part Fannie Mae's Motions to Dismiss and Expunge Lis Pendens. The Court DISMISSES the NRS 107.200 *et seq.* claim against Fannie Mae with prejudice and dismisses the wrongful foreclosure/declaratory judgment/quiet title claim with prejudice as to all Defendants. To the extent the Motion to Dismiss seeks dismissal of SFR's NRS 107.200 claim against Shellpoint, the Motion is DENIED; SFR's NRS 107.200 claim against Shellpoint may proceed. Because the sole remaining claim against Shellpoint does not affect title to or possession of real property, the Court EXPUNGES the lis pendens.

///

///

## I. BACKGROUND

This case arises out of the foreclosure proceedings on the property located at 3743 Prairie Orchid Avenue, North Las Vegas, NV 89081, Parcel No. 123-31-211-055 (the "Property"). (Am. Compl. ¶ 6, ECF No. 1-2 at 23).  Non-party Borrowers initially financed their purchase of the Property in 2007 by obtaining a loan secured by a deed of trust recorded against the Property. (Deed of Trust, Ex. A to Mot. Dismiss. ECF No. 24).  SFR later obtained title to the Property in 2012 after successfully bidding on the Property at a publicly-held foreclosure auction. (Am. Compl. ¶ 7).  SFR's title was subject to the Deed of Trust. (Order in Case No. A-15-722155-C at 14, Ex. B to Mot. Dismiss, ECF No. 24-2).

Then, in 2021, a Notice of Default was recorded against the Property. (Am. Compl. ¶ 9). Upon receipt of the Notice of Default, SFR sent a request for statements pursuant to NRS 107.200 and 107.210 to Shellpoint, the then-beneficiary, at the address provided on the Notice of Default. (*Id.* ¶ 10).  SFR also requested a copy of the Promissory Note pursuant to NRS 107.260. (*Id.*).  SFR alleges that it did not receive a timely response from Shellpoint or the current record beneficiary, Fannie Mae. (*Id.* ¶¶ 12, 13).

Nearly three months after SFR sent its request for statements, a Notice of Trustee's Sale was recorded against the Property, scheduling a foreclosure sale for March 18, 2022. (*Id.* ¶ 14). After an email exchange between SFR's and Shellpoint's counsel, Shellpoint agreed to postpone the sale. (*Id.* ¶ 18).  SFR alleges that its counsel continued to reach out to Shellpoint's counsel about its request for statements, and that SFR did not receive the requested information. (*Id.* ¶¶ 17–23).  Then, on June 24, 2022, Shellpoint informed SFR that the delinquent amount required to bring the loan current as of December 7, 2021, was $300,341.80. (*Id.* ¶ 26).  Fannie Mae ultimately foreclosed on the Property on July 29, 2022. (*Id.* ¶ 28).

At the foreclosure sale, Fannie Mae made an opening credit bid of $320,000.00. (*Id.* ¶ 29).  SFR nonetheless made a bid on the Property for $310,000.00, the approximate amount

necessary to satisfy the delinquent amount. (*Id.* ¶ 33).  The winning bid was $401,800.00, and the Property reverted to the beneficiary, Fannie Mae. (*Id.* ¶ 35).

SFR alleges that Fannie Mae violated Nevada Law by making a credit bid over the allowable amount. (*Id.* ¶ 36).  SFR brings two causes of action in its amended complaint, which was originally filed in state court.  First, SFR alleges that both Shellpoint and Fannie Mae failed to timely respond to SFR's requests for statements pursuant to NRS 107.200 and 107.210, or to provide a copy of the Promissory Note pursuant to NRS 107.260. (*Id.* ¶ 53).  Second, SFR brings a claim for wrongful foreclosure, declaratory judgment, or quiet title, seeking to invalidate or void the foreclosure sale. (*Id.* ¶¶ 54–66).  After Defendants removed this case to federal court, Fannie Mae moved to dismiss both claims.

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

1555 n.19 (9th Cir. 1989). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). On a motion to dismiss, a court may also take judicial notice of "matters of public record."[1] *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.  DISCUSSION

Fannie Mae moves to dismiss both claims and expunge the lis pendens. The Court begins with the NRS 107.200 claim.

///

///

---

[1] The Court takes judicial notice of the Deed of Trust, Notice of Default, and Notice of Trustee's Sale because they are incorporated by reference in the Amended Complaint, which necessarily relies on the contents of these documents, and because these documents are publicly recorded.

### A.     NRS 107.200 Claim

Fannie Mae argues that SFR fails to state an NRS 107.200 claim against Fannie Mae because Fannie Mae was not the record deed of trust beneficiary at the time of SFR's 107.200 request. (Mot. Dismiss 8:27–28).  NRS 107.200 *et seq.* requires a deed of trust beneficiary to provide certain information regarding the debt secured by the deed of trust to an authorized requester within 21 days of receiving a request.[2]  Liability extends to a beneficiary who "willfully fails" to timely deliver a statement requested pursuant to NRS 107.200 or NRS 107.210. NRS 107.300.  Nothing in the statutory language extends liability to any other entity, including a successor in interest.

The Court declines to extend liability to Fannie Mae because Fannie Mae later became the beneficiary.  To do so would conflict with the plain language of NRS 107.300 restricting liability to "the beneficiary who willfully fails to deliver a statement" after "receiving a request."  At the time of SFR's request, Shellpoint was the record deed of trust beneficiary, and accordingly, SFR alleges that it sent a request for statements to Shellpoint. (Am. Compl. ¶ 10). SFR does not allege that it sent a request for statements to Fannie Mae, nor does SFR allege that Fannie Mae was the beneficiary at the time.  Fannie Mae could not have willfully failed to deliver a statement it was never asked to deliver and was not statutorily required to deliver.

Nor will the Court find Fannie Mae vicariously liable for any alleged wrongdoing by Shellpoint.[3]  SFR contends that "[w]hile Shellpoint was the *recorded* beneficiary at the time the

---

[2] To the extent SFR bases its claim on Shellpoint and Fannie Mae's failure to provide a copy of the promissory note under NRS 107.260, SFR fails to state a cause of action.  NRS 107.300 extends liability to a beneficiary who willfully fails to deliver a statement requested pursuant to NRS 107.200 or 107.210, not 107.260.

[3] Fannie Mae's Motion to Dismiss briefly argues that Shellpoint itself is not liable under NRS 107.200 because "Shellpoint provided SFR with the requested statements prior to the foreclosure sale, which it postponed at SFR's request, and gave SFR the opportunity to pay off the Loan by remitting the payoff amount as of December 7, 2021." (Mot. Dismiss 10:11–15).  Shellpoint repeats this argument in its Notices of Joinder, (ECF Nos. 26, 37).  Because SFR's Amended Complaint alleges that Shellpoint was required to respond within 21 days of November 16, 2021, and that Shellpoint did not respond until June 24, 2022, the Court will not dismiss SFR's first cause of action as to Shellpoint at this stage.

request was made, SFR understood Fannie Mae was the true beneficiary of the deed of trust, hence the allegation Shellpoint was/is the agent of Fannie Mae." (Resp. 2:12–14, ECF No. 30). SFR does not adequately explain why the Court should depart from the plain language of NRS 107.300 because SFR believed Fannie Mae was the "true" beneficiary. Regardless of what SFR believed to be true, Fannie Mae was not the beneficiary, and therefore cannot be liable. Moreover, if SFR believed Fannie Mae was the true beneficiary, then SFR would have—or should have—sent its request to Fannie Mae. SFR did not do so.

Lastly, SFR fails to explain how its agency theory of liability comports with the statutory language extending liability to a beneficiary who "willfully fails to deliver a statement." Even if Shellpoint was acting as Fannie Mae's agent, Fannie Mae would be liable only for Shellpoint's conduct that fell within the scope of Shellpoint's authority. *See Dezzani v. Kern & Assocs., Ltd.*, 412 P.3d 56, 61 (Nev. 2018). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Simmons Self-Storage v. Rib Roof, Inc.*, 331 P.3d 850, 856 (Nev. 2014), *as modified on denial of reh'g* (Nov. 24, 2014) (quoting Restatement (Third) of Agency § 2.01 (2006)). SFR has not alleged that Shellpoint reasonably believed that Fannie Mae wanted Shellpoint to willfully violate its statutory obligations.

SFR has not and cannot maintain a claim against Fannie Mae for violation of NRS 107.200. Fannie Mae was not the beneficiary, SFR never requested a statement from Fannie Mae, and to the extent Shellpoint may be liable for any violation of NRS 107.200 *et seq.*, Shellpoint was not acting within the scope of its agency authority. Accordingly, the Court DISMISSES the first cause of action as to Fannie Mae. To the extent the Motion to Dismiss requests the Court to deny the first cause of action as to Shellpoint as well, that request is

///

DENIED.  SFR's first cause of action may proceed as against Shellpoint for Shellpoint's alleged willful failure to deliver a statement requested pursuant to NRS 107.200 or 107.210.

### B.   Wrongful Foreclosure/Declaratory Judgment/Quiet Title

SFR's second cause of action seeks a declaration that the foreclosure sale was void or invalid because Fannie Mae allegedly wrongfully foreclosed on the Property for an amount that was not in default. (Am. Compl. ¶¶ 63–66).  SFR alleges that leading up to the sale, the loan was not accelerated, but rather still an installment loan. (*Id.* ¶ 56).  That is, SFR alleges that the only amounts due and owing at the time of the sale, and being foreclosed upon, were the delinquent amount or amount in default. (*Id.*).  As a result, SFR maintains that Fannie Mae wrongfully foreclosed on the Property when it bid an amount higher than the amount due.

SFR's claim rests on the presumption that the loan was not accelerated, and therefore Fannie Mae was only permitted to collect up to, and including, the amount of delinquency as of the date of the sale. (*Id.* ¶ 57).  Relevant statutory language belies this presumption.  A foreclosure sale is the sale of real property to enforce an obligation secured by a mortgage or lien on the property, "including the exercise of a trustee's power of sale pursuant to NRS 107.080." NRS 40.427.  Here, SFR's title to the Property was subject to the Deed of Trust, which secures "the repayment of the Loan." (Deed of Trust at 3, Ex. A to Mot. Dismiss). The Deed of Trust further defines the Loan as "the debt evidenced by the Note, plus any interest, any prepayment charges and late charges due under the Note, and all sums due under [the Deed of Trust], plus interest." (*Id.* at 2).  And pursuant to the Deed of Trust, the "debt evidenced by the Note" is the original principal amount, $246,999.00, plus interest. (*Id.*).  Thus, Fannie Mae was entitled to collect up to the full amount necessary to satisfy "the obligation being enforced by the foreclosure sale," *i.e.*, the full amount owed on the Loan. *See* NRS 40.462(2)(b).

///

SFR nonetheless argues that the loan was never accelerated. It states, "the real problem with Fannie Mae/Shellpoint's argument is the notice of sale does not mention acceleration or making the loan wholly due, or declaring all sums immediately due and payable, or any other language that would tell a borrower the whole debt is due now." (Resp. 8:3–5). But Paragraph 22 of the Deed of Trust states that after a notice of default is filed and a borrower fails to cure the default, the Lender, "without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note." (Deed of Trust ¶ 22). Moreover, the Lender issued a Notice of Default, which included a notice of intent to accelerate.[4] (Notice of Default, Ex. J to Mot. Dismiss, ECF No. 24-10) (noting that "the time to reinstate may be extended to 5 days before the date of sale pursuant to NRS 107.080," and the "Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to *acceleration and sale*" (emphasis added)). The Borrowers failed to cure that default, and the Lender issued a notice of sale indicating that the entire amount on the Loan was due. (Notice of Trustee's Sale, Ex. K to Mot. Dismiss, ECF No. 24-11).

SFR relies on inapposite case law and accuses Fannie Mae of presenting arguments inconsistent with its arguments in other cases unrelated to acceleration and the amount that can be bid on a foreclosure sale. These cases are irrelevant to SFR's claim in this case. *See, e.g.*, *PennyMac Holdings, LLC v. Eldorado Neighborhood Second Homeowners Ass'n*, 441 P.3d 82 (Nev. 2019) (concluding that "appellant sufficiently alleged the homeowner was not in default on any amounts comprising respondent's lien so as to state a viable claim for wrongful foreclosure"); *Daisy Tr. v. Federal Nat'l Mortg. Ass'n*, No. 21-15595, 2022 WL 874634 (9th Cir. Mar. 24, 2022) (discussing whether unrecorded acceleration notice renders debt "wholly

---

[4] To the extent SFR argues that Borrowers were not afforded the full 35-day cure period required by statute, the Court reminds SFR that the Notice of Default, containing a notice of intent to accelerate and language advising the Borrowers of their right to reinstate, was recorded more than four months before the originally scheduled date for the foreclosure sale.

due" for purposes of NRS 106.240). SFR does not cite any relevant cases or other authority to support its argument that the loan was never accelerated or that the foreclosure sale was unlawful. The Court therefore finds that SFR has not adequately alleged that the foreclosure was wrongful, void, or invalid, and the Court is unaware of any legal basis upon which SFR's claim could rest. Accordingly, the Court DISMISSES SFR's second cause of action with prejudice as to both Defendants.

### C. Expunging the Lis Pendens

Upon commencing this action, SFR recorded a lis pendens against the Property. (Not. Lis Pendens, Ex. B to Not. Removal at 11, ECF No. 1-2). A lis pendens, or notice of the pendency of an action, applies to actions affecting the title or possession of real property. NRS 14.010(1). A court must order the cancellation of the notice of pendency if the court finds that the party who recorded the notice of pendency of the action has failed to establish that a likelihood of prevailing on the merits, and that if the party prevails, he or she will be entitled to relief affecting the title or possession of the real property. *Id.* 14.015(5). Here, the Court dismisses SFR's wrongful foreclosure/declaratory judgment/quiet title claim; SFR is therefore not likely to succeed on the merits of that claim. SFR's sole remaining claim, violation of NRS 107.200 *et seq.* against Shellpoint, is a claim for money damages and does not affect the title or possession of real property. Accordingly, the lis pendens must be expunged.

### V. CONCLUSION

**IT IS HEREBY ORDERED** that Fannie Mae's Motions to Dismiss Amended Complaint and Expunge Lis Pendens, (ECF Nos. 24, 25), are **GRANTED in part and DENIED in part**. The Court **DISMISSES with prejudice** the NRS 107.200 *et seq.* claim against Fannie Mae. The Court further **DISMISSES with prejudice** the wrongful foreclosure/declaratory judgment/quiet title claim with prejudice as to all Defendants. The Court **DENIES** the Motion to Dismiss to the extent it seeks dismissal of SFR's NRS 107.200

claim against Shellpoint; SFR's NRS 107.200 claim against Shellpoint may proceed for Shellpoint's alleged willful failure to deliver a statement requested pursuant to NRS 107.200 or 107.210.

**IT IS FURTHER ORDERED** that the notice of pendency is **CANCELLED**. This cancellation has the same effect as an expungement of the original notice.

**IT IS FURTHER ORDERED** that SFR shall record a copy of this Order of cancellation with the county recorder.

**DATED** this __22__ day of January, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT